UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

**Common Cause** et al.,

Plaintiffs,

v.

**Department of Homeland Security** et al.,

Defendants.

**Case No. 26-cv-8882**

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO EXPAND THE TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

Table of Authorities ........ iii

Introduction ........ 1

Background ........ 2

Argument ........ 5

I. Plaintiffs are likely to succeed on the merits of their claims against the Executive Office of the President. ........ 5

A. EOP's use of appropriated funds to produce and distribute political ads to MAGA Inc. is *ultra vires*. ........ 6

B. EOP's use of appropriated funds to produce and distribute political ads to MAGA Inc. violates the Equal Protection Clause. ........ 10

II. Plaintiffs satisfy the remaining factors for a TRO. ........ 12

A. Plaintiffs will continue to suffer irreparable harm absent an expanded TRO. ........ 12

B. The balance of equities and public interest favor Plaintiffs. ........ 15

Conclusion ........ 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*,
No. 25-cv-3657 (CM), 2026 WL 1256545 (S.D.N.Y. May 7, 2026) ....................... 6, 7

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)................................................................................................ 6

*Bowen v. Michigan Acad. of Fam. Physicians*,
476 U.S. 667 (1986)................................................................................................ 7

*Brenntag Int'l Chems., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999)................................................................................... 12

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985)................................................................................................ 11

*City of Saint Paul v. Wright*,
816 F. Supp. 3d 65 (D.D.C. 2026) .................................................................. 10, 11

*Dalton v. Specter*,
511 U.S. 462 (1994)................................................................................................ 6

*Davis v. Federal Election Commission*,
554 U.S. 724 (2008)................................................................................................ 5

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019) .............................................................................. 7, 8

*District of Columbia Common Cause v. District of Columbia*,
858 F.2d 1 (D.D.C. 1988) ...................................................................................... 10

*Env't Def. Ctr. v. Babbitt*,
73 F.3d 867 (9th Cir. 1995) ..................................................................................... 8

*Fed. Express Corp. v. U.S. Dep't of Commerce*,
39 F.4th 756 (D.C. Cir. 2022).............................................................................. 6, 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)................................................................................................ 12

*Gov't Emps. Ins. Co. v. Patel*,
166 F.4th 280 (2d Cir. 2026) ................................................................................. 12

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949)................................................................................................ 6

*League of United Latin Am. Citizens v. Exec. Off. of President*,
808 F. Supp. 3d 29 (D.D.C. 2025) .......................................................................... 15

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........ 15

*Lindahl v. OPM*,
470 U.S. 768 (1985) ........ 7

*N.Y. Progress & Protection PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013) ........ 12

*Nat'l Tr. for Historic Pres. in the U. S. v. Nat'l Park Serv.*,
821 F. Supp. 3d 62 (D.D.C. 2026) ........ 7, 8

*Neguse v. ICE*,
822 F. Supp. 3d 86 (D.D.C. 2026) ........ 8

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ........ 7

*Off. of Pers. Mgmt. v. Richmond*,
496 U.S. 414 (1990) ........ 15

*Perkins Coie LLP v. DOJ*,
783 F. Supp. 3d 105 (D.D.C. 2025) ........ 11

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*,
131 F.4th 102 (2d Cir. 2025) ........ 12

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ........ 12

*Summerour v. IRS*,
No. CV 23-2442 (LLA), 2024 WL 3443604 (D.D.C. July 16, 2024) ........ 7

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*,
665 F.3d 1339 (D.C. Cir. 2012) ........ 8

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ........ 10

*Yale New Haven Hosp. v. Becerra*,
56 F.4th 9 (2d Cir. 2022) ........ 7, 8

**Statutes**

31 U.S.C. § 1301 ........ 8

Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173 ........ 8, 9

Continuing Appropriations and Extensions Act, 2027, Pub. L. No. 119-103,
140 Stat. 987 ........ 9

**Other Authorities**


32BJ SEIU (@32bjseiu), Instagram, https://www.instagram.com/32bjseiu/ .................. 14

*Acting Comptroller General Fisher to the Chairman*, 31 Comp. Gen. 311 (1952) ........... 9

Betsy Klein, *Taxpayer-funded ads aired hundreds of times after judge ordered Trump to halt the push*, CNN (Oct. 12, 2026), https://perma.cc/TSC5-VACA ........... 5

Complaint, *Campaign Legal Ctr. v. Trump et al.* (Fed. Elec. Comm'n Sep. 14, 2026), https://perma.cc/MJ94-L4TC ................................................................ 3

Complaint, *Common Cause v. Trump et al.* (Fed. Elec. Comm'n Oct. 8, 2026), https://perma.cc/6NZE-8S84 ........................................................................ 3

Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 5, 2026, at 18:25 ET), https://perma.cc/Y3PJ-JC2W......................................................................... 3

Rick Hasen, *Political Money Is Flowing to Influencers. But From Whom?*, Election L. Blog (May 16, 2026), https://perma.cc/CGB4-UQU3 ............................ 14

Robert Louis Hunter (@vote4roberthunter), Instagram, https://www.instagram.com/vote4roberthunter/ ....................................................... 14

The White House, *$5000 to Americans* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=OaTi_y8_GLk.................................................... 4

The White House, *America Will Never Be A Socialist/Communist Country* (YouTube, Sep. 11, 2026), https://www.youtube.com/watch?v=kB2tJV8bMnU.................................................. 3

The White House, *Every Democrat Voted Against No Tax on Tips* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=Uf8CQeM7jHo........................... 4, 14

The White House, *Man in the Arena* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=0ImmQBafX7Y ................................................. 5

The White House, *Mount Rushmore* (YouTube, Sep. 9, 2026), https://www.youtube.com/watch?v=wzR-9ek2unA ................................................... 3

U.S. Gov't Accountability Off., GAO-17-797SP, *Principles of Federal Appropriations Law* (4th ed. 2017), https://perma.cc/NLQ5-G4DA...................... 9, 10

Video posted by The White House (@whitehouse), Instagram, *The largest tax cuts in history* (Oct. 15, 2026), https://www.instagram.com/reel/Deh5XJ_jVVy/?mdxt=MWVodGo3eDl2OTluNw%3D%3D ........................................................................................ 4, 14

## INTRODUCTION

Defendants created (or, in their words, "compiled") advertisements fawning over President Trump and attacking his ideological opponents. Defendants then siphoned $20 million of taxpayer funds intended to commemorate the work of Customs and Border Protection to pay an ad agency to run the ads on primetime television around the country. Each ad ended with the tagline "Paid for by the U.S. Government."

While this Court was deciding an expedited motion for a temporary restraining order, Defendants did not stop the ads. They continued to run them. And when this Court enjoined that flatly illegal use of taxpayer funds to promote the President and his party weeks before a hard-fought midterm election, Defendants changed tack. They kept the ads on official government websites and social media. And although they removed the tagline "Paid for by the U.S. Government," there was no question government funds were used and that the government endorsed the ads: they had been created by public employees and were hosted on government sites. Going further yet, the day after this Court issued its TRO, Defendants posted new ads on the White House's official YouTube page—including one that explicitly promises $5,000 to all adult citizens if the Democrats lose the midterms—and put an ad up on the White House's official Instagram page. MAGA Inc., a super PAC that President Trump explicitly describes as under his control, then started broadcasting virtually the same new ads on national television. The only difference between these broadcasts and the ads hosted on government websites is that the tagline says that the ads are paid for by MAGA, Inc.—a misleading claim given that production costs were incurred by taxpayers.

After burning through most of the advertising budget before the Court could decide the TRO, Defendants have now created a game of Whac-A-Mole. They continue to create purely partisan propaganda—paid for by U.S. taxpayers—and post it on websites and social media that have the

imprimatur of the federal government. And taxpayer-funded partisan propaganda is still airing on national television, only instead of a federal agency under President Trump's control pushing the ads, it's now a super PAC under President Trump's control. For Plaintiffs, that makes no difference. As before, the taxpayers are funding—in one way or another—political ads that irreparably harm Plaintiffs in the days before the midterms. Because these same harms are at stake, the Court should expand the TRO to enjoin further dissemination of the advertisements that EOP compiled and prevent their continued circulation on television through MAGA Inc. and on the White House's official social media pages.

## BACKGROUND

**1.** Starting in September, at the direction of President Trump, Defendant agencies—the Executive Office of the President, the Office of Management and Budget, and the Department of Homeland Security—redirected taxpayer funds appropriated for border security to finance an advertising campaign featuring President Trump in advance of the November 3 midterm elections. Op. and Order 5-13, Dkt. 42. Plaintiffs alleged that the use of taxpayer funds to run a partisan ad campaign was *ultra vires* and violated the Administrative Procedure Act, the Purpose Statute, the prohibition on using appropriated funds for publicity or propaganda in Section 718 of various appropriations acts, and the Equal Protection Clause.

The Court granted Plaintiffs' motion for a temporary restraining order and Section 705 stay. Order, Dkt. 41. The Order stayed the purchase order between OMB and LMD, Inc., the advertising agency distributing the taxpayer-funded advertisements. The Order also stayed OMB's $20 million apportionment to fund the development, creation, or airing of the advertisements—including but not limited to The Country He Loves, Celebrating the Enduring Spirit, Final Battle, To the Great Proud People of Iran, and Maduro (referred to as "the Challenged Advertisements" in the Order)—covered by the purchase order. The Court enjoined Defendants, and anyone acting in concert with

Defendants, from further funding, disseminating, or airing the Challenged Advertisements. Order 3, Dkt. 41. Despite the Order, which extends until November 20, Dkt. 80., several of the Challenged Advertisements remain on the White House's YouTube channel.[1]

**2.** In response to widespread disapproval of the taxpayer-funded ads, the President stated that, at his direction, airing of the ads would be taken over by a super PAC called MAGA Inc.[2] Time and again, notwithstanding federal campaign finance restrictions to the contrary, President Trump has proclaimed his control over MAGA Inc. For example, he told the press that MAGA Inc.'s money is "my money that I control" and that he "could spend it on pretty much anything [he] wants."[3] And in an interview from the Oval Office, Trump even shared his plans for using the PAC's $400 million war chest to influence the midterms.[4]

Less than a week after the Court's Order granting the TRO, MAGA Inc. began airing an ad titled "Every Democrat Voted Against No Tax on Tips."[5] The ad features a voiceover from President Trump saying "[t]hey voted against no tax on tips. They voted against no tax on overtime. They voted against no tax on social security" while the background flips through photos of

---

[1] The White House, *America Will Never Be A Socialist/Communist Country* (YouTube, Sep. 11, 2026), https://www.youtube.com/watch?v=kB2tJV8bMnU; The White House, *Mount Rushmore* (YouTube, Sep. 9, 2026), https://www.youtube.com/watch?v=wzR-9ek2unA.

Multiple complaints have been filed with the Federal Election Commission alleging that President Trump's direction of MAGA Inc. violates campaign finance laws. *See* Complaint, *Campaign Legal Ctr. v. Trump et al.*, (Fed. Elec. Comm'n Sep. 14, 2026), https://perma.cc/MJ94-L4TC; Complaint, *Common Cause v. Trump et al.*, (Fed. Elec. Comm'n Oct. 8, 2026), https://perma.cc/6NZE-8S84.

[2] Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 5, 2026, at 18:25 ET), https://perma.cc/Y3PJ-JC2W.

[3] Complaint at 4-5, *Campaign Legal Ctr. v. Trump et al.*, (Fed. Elec. Comm'n Sep. 14, 2026), https://perma.cc/MJ94-L4TC.

[4] *Id.* at 5-6.

[5] Status Report, *Democratic Nat'l Comm. v. Trump*, No. 1:26-cv-3605, (D.D.C. Oct. 19, 2026), Dkt. 14.

Democratic members of Congress, including Representative Alexandria Ocasio-Cortez and Senator Jon Ossoff, both of whom are running for reelection. The ad also includes a voiceover from President Trump saying "every single Democrat in Congress voted against your tax cuts" while playing a clip of Trump at an event promoting his "One Big Beautiful Bill." The ad ends with a clip of Minority Leader Hakeem Jeffries at a press conference before the vote on the bill saying "every single House Democrat will vote 'hell no.'"

"Every Democrat Voted Against No Tax on Tips" did not run only on tv; it appeared on the official White House YouTube channel the day after this Court issued its Order.[6] The official White House Instagram also posted the YouTube version of the ad on October 15.[7]

Additionally, the official White House YouTube channel posted two other political advertisements the day after the Order. One ad, "$5,000 to Americans," begins with President Trump sitting in the Oval Office, looking straight to camera while he says, "I'm going to give all adult citizens in the United States of America $5,000."[8] The background then cuts to stacks of $100 bills. The ad goes onto show pictures and videos of Trump at campaign events for Republican midterm candidates, while his voiceover says, "Democrat policies won't allow this to happen. In fact, the opposite. They're going to raise your taxes. If the Democrats win, you will have an economic depression. If the Republicans win, you will each have $5,000 in your pocket and

[6] The White House, *Every Democrat Voted Against No Tax on Tips* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=Uf8CQeM7jHo. The version that appears on the White House YouTube channel does not include the tag-line that MAGA Inc. paid for and is responsible for the content of the ad.

[7] Video posted by The White House (@whitehouse), Instagram, *The largest tax cuts in history* (Oct. 15, 2026), https://www.instagram.com/reel/Deh5XJ_jVVy/?mdxt=MWVodGo3eDl2OTluNw%3D%3D.

[8] The White House, *$5000 to Americans* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=OaTi_y8_GLk.

economic success for our country like we have never ever seen before." Another ad, "Man in the Arena," is filmed in the style of a pre-game hype reel and features video footage of President Trump while a voiceover recites a passage from President Theodore Roosevelt's "Citizenship in a Republic" speech about how people should give credit to those who take action, even at risk of failure or criticism.[9]

**3.** When the Court ordered limited, expedited discovery, Order, Dkt. 53, Plaintiffs served interrogatories and requests for admission seeking, among other things, information about who created the relevant ads and how they were paid for. Plaintiffs' discovery defined the ads to include the ads that DHS paid to run on tv and the new ads on the White House YouTube channel. Defendants' largely deficient discovery responses are the subject of Plaintiffs' pending motion to compel. Among the limited substantive information provided, Defendants did admit that EOP staff "compiled certain of the Challenged Advertisements."[10] That response was consistent with public reporting, that the ads "were created in-house by the White House video team—which is part of the communications team, responsible for the administration's public messaging."[11]

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits of their claims against the Executive Office of the President.

Plaintiffs are likely to succeed on the merits because EOP's creation and distribution of the ads is *ultra vires* and violates the Equal Protection Clause.

---

[9] The White House, *Man in the Arena* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=0ImmQBafX7Y.

[10] Defs.' Am. Resp. & Objs. to Pls.' Interrogs., at 5 (Oct. 21, 2026).

[11] Betsy Klein, *Taxpayer-funded ads aired hundreds of times after judge ordered Trump to halt the push*, CNN (Oct. 12, 2026), https://perma.cc/TSC5-VACA.

As an initial matter, because the standing inquiry focuses on circumstances at the time the complaint was filed, *see Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008), the standing analysis here is the same as it was when this Court decided the first TRO motion. As this Court already concluded, Plaintiffs "have demonstrated injury in fact from the advertising campaign," which continues through ads airing on the White House YouTube site and on television through airtime paid for by MAGA Inc. Dkt. 42 at 24. And just as Defendants previously "concede[d] that they disseminated the advertisements that are harming" Plaintiffs, *id.* at 29, they further admit that EOP staff "compiled" ads that continue to be disseminated, Defs.' Am. Resp. & Objs. to Pls.' Interrogs., at 5 (Oct. 21, 2026). Finally, because an order expanding the TRO to enjoin further dissemination of the advertisements that EOP compiled and prevent their continued circulation on television through MAGA Inc. and on the White House's official social media pages would "aid in leveling the uneven playing field brought on by Defendants' conduct," Plaintiffs' injuries remain redressable by an expanded TRO. Dkt. 42 at 30 (cleaned up).

### A. EOP's use of appropriated funds to produce and distribute political ads to MAGA Inc. is *ultra vires*.

EOP's use of appropriated funds to produce and disseminate the challenged advertisements is *ultra vires* and should be enjoined. "Federal courts have long exercised equitable authority to restrain executive action that exceeds the scope of statutory limits." *Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*, No. 25-cv-3657 (CM), 2026 WL 1256545, at *29 (S.D.N.Y. May 7, 2026); *see also Dalton v. Specter*, 511 U.S. 462, 472 (1994); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 (1949). "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). This "form of judicial review survived

the enactment of the APA." *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022). Thus, post-APA, courts continue to "presume that Congress intends the executive to obey its statutory commands and, accordingly," Congress "expects the courts to grant relief when an executive agency violates such a command." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 681 (1986).

The Court may enjoin executive action that is "in excess of its delegated powers and contrary to a specific prohibition in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (cleaned up). Specifically, to prevail on an *ultra vires* claim, a plaintiff must show that (i) there is no "express" preclusion of all judicial review; "(ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 26-27 (2d Cir. 2022) (quoting *DCH Reg'l Med. Ctr.*, 925 F.3d 503, 509 (D.C. Cir. 2019)); *Fed. Express Corp.*, 39 F.4th at 763. That standard is met here.

**1.** The first two requirements are satisfied because Congress has neither expressly precluded judicial review nor provided an adequate alternative for review here. Congress must employ "unambiguous and comprehensive" language for a court to conclude that Congress "intends to bar judicial review altogether." *Lindahl v. OPM*, 470 U.S. 768, 779–80 (1985). "Only express statutory preclusion bars *ultra vires* review; implied preclusion is insufficient." *Summerour v. IRS*, No. CV 23-2442 (LLA), 2024 WL 3443604, at *4 (D.D.C. July 16, 2024). Thus, "[a]bsent an express statutory command to the contrary—of which there is none here—courts retain authority to review whether executive officials have exceeded the limits Congress imposed." *Am. Council of Learned Societies*, 2026 WL 1256545, at *30. And the APA does not provide an alternative path for review. That is because, "[a]s a general matter, the Executive Office of the President is not an 'agency'

under the APA." *Nat'l Tr. for Historic Pres. in the U. S. v. Nat'l Park Serv.*, 821 F. Supp. 3d 62, 72 (D.D.C. 2026) (citation omitted). The resulting gap—no express preclusion of review and no alternative avenue for review—allows Plaintiffs' *ultra vires* claim to proceed to the merits.

**2.** As to the third requirement, Plaintiffs are likely to establish that EOP is "plainly act[ing] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Yale New Haven Hosp.*, 56 F.4th at 27 (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)). By using appropriated funds to create political propaganda, EOP is violating both the Purpose Statute and Section 718.

The Purpose Statute, which "reinforce[s] Congress's control over appropriated funds," prohibits EOP from using federal funds other than for the "'objects for which the appropriations were made except as otherwise provided by law.'" *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347-48 (D.C. Cir. 2012) (Kavanaugh, J.) (quoting 31 U.S.C. § 1301(a)). "[T]he use of any government resources—whether salaries, employees, paper, or buildings—. . . would entail government expenditures." *Neguse v. ICE*, 822 F. Supp. 3d 86, 104 (D.D.C. 2026) (quoting *Env't Def. Ctr. v. Babbitt*, 73 F.3d 867, 871-72 (9th Cir. 1995)). That includes "time spent" by government employees and the use of "information technology systems and contracts, office supplies, utilities, and building infrastructure." *Id.* at 106.

Congress certainly did not appropriate any funding to EOP to produce political advertisements praising President Trump and attacking his ideological opponents. Nor did Congress appropriate funds for EOP to then disseminate those ads to a super PAC to influence an ongoing election. For Fiscal Years 2026 and 2027, EOP was appropriated funds for staff and consultant salaries, subsistence expenses, and various operating expenses related to the Executive Residence, including "security," "information resources," "motor vehicles," "heating and lighting," and the

like. Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. E, title II, 140 Stat. 173, 450–56; Continuing Appropriations and Extensions Act, 2027, Pub. L. No. 119-103, div. A, § 101, 140 Stat. 987, 987-99 (providing continuing appropriations for FY2027 through Dec. 11, 2026). None of these appropriations authorize the creation of political advertisements.

Indeed, when Congress intended to permit EOP to use appropriations for political purposes, it specifically delineated those permitted purposes and required that political expenses incurred by EOP be reimbursed by the sponsoring political entity and not be borne by the taxpayers. For example, Congress has required "each person sponsoring a reimbursable political event" at the White House "to pay in advance an amount equal to the estimated cost of the event" and "the national committee of the political party of the President to maintain on deposit $25,000, to be separately accounted for and available for expenses relating to reimbursable political events sponsored by such committee during such fiscal year." FY2026 Appropriations Act, div. E, title II, 140 Stat. at 450-51.

If the violation of the Purpose Statute weren't enough, Section 718 imposes a specific, clear, and mandatory bar on the Executive from using appropriations "directly or indirectly, including by private contractor, for publicity or propaganda purposes." FY2026 Appropriations Act, Pub. L. No. 119-75, § 718, 140 Stat. at 495 as incorporated by FY2027 Continuing Resolution, Pub. L. No. 119-103, div. A, §§ 101, 103 140 Stat. at 987-99. As the Court has already recognized, Section 718 has been interpreted to prohibit "self-aggrandizement, covert propaganda, and purely partisan materials." Op. and Order 36, Dkt. 42 (quoting GAO Red Book, at 3-282). Accordingly, taxpayer funds may not be used for the "individual glorification" of executive officials, *Acting Comptroller General Fisher to the Chairman,* 31 Comp. Gen. 311, 313 (1952), or "to emphasize the importance

of the agency or activity in question," *id.* And appropriations may not be used "to aid a political party or candidates." GAO Red Book, at 3-293-94 (citation omitted).

The challenged advertisements are publicity or propaganda in violation of Section 718—a point that Defendants have thus far not contested. The latest ads created by EOP—and disseminated by EOP on the White House YouTube and by MAGA Inc. on television—are at least as political and partisan as the ads the Court previously found likely violated Section 718. The ad titled "Every Democrat Voted Against No Tax on Tips," which appeared on the White House YouTube page the day after the Court's TRO order and is now being aired by MAGA Inc., features President Trump saying that "[t]hey voted against no tax on tips," "no tax on overtime," and "no tax on social security" while photos of Democratic members of Congress, including Representative Alexandria Ocasio-Cortez and Senator Jon Ossoff, both of whom are running for reelection, are displayed on screen. President Trump adds, "every single Democrat in Congress voted against your tax cuts." Other ads previously aired by DHS, including The Country He Loves (titled America Will Never Be a Socialist/Communist Country) and Celebrating the American Spirit (titled Mount Rushmore), remain on the White House's YouTube channel. Just as disseminating these ads with appropriations violates Section 718, so too does creating them with such appropriations. *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 11 (D.C. Cir. 1988) ("Printing pamphlets, flyers, and posters" with appropriated funds constituted prohibited "publicity or propaganda").

### B. EOP's use of appropriated funds to produce and distribute political ads to MAGA Inc. violates the Equal Protection Clause.

The government violates the Constitution's guarantee of equal protection when it treats a group "differently from others similarly situated" without a "rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also City of Saint Paul v.*

*Wright*, 816 F. Supp. 3d 65, 72-74 (D.D.C. 2026) (federal government violated equal protection by terminating environmental project grants in states that voted against President Trump in 2024).

The government's actions here do just that. EOP has produced advertisements that extol the President and attack his perceived political enemies, and it has supplied them to a pro-Republican PAC to buoy Republicans and harm both Democrats and socialists in the midterm elections. The challenged ads attack "socialists" and "communists," terms President Trump has repeatedly linked to Democrats. So there is no need to "infer animus"; the ads themselves, plus "contextual evidence, including President Trump's statements over nearly the past decade," "makes obvious the Trump Administration's animus toward plaintiff[s]." *Perkins Coie LLP v. DOJ*, 783 F. Supp. 3d 105, 167 (D.D.C. 2025), *appeal filed*, No. 25-5241 (D.C. Cir. Jul. 2, 2025). And the additional advertisements produced by EOP staff now airing nationwide expressly attack Democrats. *See supra* pp. 3-5. Thus, the government has devoted its time, labor, and resources to aid Republican candidates to the disadvantage of their political opponents. *See* Op. and Order, Dkt. 42.

There is, of course, no legitimate governmental interest in using government resources either to attack socialists or to campaign for one major political party over another. After all, "a bare . . . desire to harm a politically unpopular group" is "not [a] legitimate state interest[]." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985) (citation omitted). Indeed, the biased spending here is analogous to that at issue in *City of Saint Paul*, in which the federal government cut grant funding in certain states because those states had voted against President Trump in the 2024 election. 816 F. Supp. 3d at 72. As the D.C. District Court rightly concluded, a state's "political identity," and whether its residents voted for President Trump, was not a "rational basis" to target them for grant terminations. *Id*. Here, the political animus is even starker, and Defendants cannot plausibly point to any rational reason for funding advertisements attacking Democrats or

socialists. EOP's production and distribution of political campaign ads thus violates the Constitution, and the Court may enjoin it on that basis as well. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

**II. Plaintiffs satisfy the remaining factors for a TRO.**

Plaintiffs will suffer irreparable harm from the ads, just as they did from the similar ads that ran just before this Court entered the first TRO. Further, the balance of equities tips in Plaintiffs' favor. *See* Op. and Order 37-39, Dkt. 42.

**A. Plaintiffs will continue to suffer irreparable harm absent an expanded TRO.**

As this Court recognized less than two weeks ago, Plaintiffs have shown "an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 291 (2d Cir. 2026) (quoting *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025)). And "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)). This is particularly true because "timing is of the essence in politics" and relief delayed by "even a day or two may be intolerable." *N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (cleaned up).

The taxpayer-funded advertisements are currently running on television (disseminated by MAGA Inc.), are available on the White House's YouTube page, and at least one advertisement—"Every Democrat Voted Against No Tax on Tips"—is on the White House's Instagram page, reaching millions of voters every day. *See supra* pp. 3-5. Because "[e]arly and absentee voting is already underway in some states, including in Alabama, where Hunter is running for election, as

well as New York, where SEIU 32BJ and Empire PAC support candidates," every day that the advertisements continue to run on television and that the videos remain up on the White House's YouTube and Instagram pages harms Plaintiffs. Op. and Order 37, Dkt. 42. Without question, the ads diminish Robert Hunter's messages as a Democratic candidate and a socialist, and diminish the SEIU Plaintiffs' messages as supporters of Democratic candidates the White House is attacking.

Plaintiffs' harm is the same as the harm caused by ads that were previously aired by DHS—that the federal government has chosen a different means to use its resources to attack Plaintiffs and the candidates that they support makes no difference. EOP is effectively subsidizing the campaign advocacy of MAGA Inc. and the President using taxpayer funds—a subsidy that Plaintiffs cannot receive or hope to counter. Empire PAC and Hunter are required to pay for the creation of any advertisements they seek to distribute in the election cycle and cannot have them subsidized by government appropriations. Hunter Second Decl. ¶ 13; Banks Second Decl. ¶ 11. For instance, Empire PAC paid roughly $14,000 to create the palm cards supporting candidates during the general election cycle. Banks Decl. ¶ 7. Similarly, SEIU 32BJ must pay for the creation and dissemination of any campaign materials. Tall Second Decl. ¶ 18.

MAGA Inc. is running its advertisements on both national networks and in the New York markets, where SEIU 32BJ and Empire PAC are spending money to support candidates and is running "Every Democrat Voted Against No Tax on Tips," in the Alabama local market, where Hunter is in a race for office. Ward-Packard Third Decl. ¶ 9. As a result, MAGA Inc.'s government-sponsored advertisements alter the campaign environment in which Hunter, Empire PAC, and SEIU 32BJ are running as candidates and are spending resources in support of campaigns. Hunter Decl. ¶¶ 11–16; Banks Decl. ¶¶ 16–18; Tall Decl. ¶ 26.

Plaintiffs cannot fight fire with fire nor match the far reach of the advertisements. The White House has 3.35 million YouTube subscribers and 12.5 million Instagram followers. The White House's "Every Democrat Voted Against No Tax on Tips," advertisement has over 19,000 views and 1,400 likes on YouTube.[12] On Instagram, that same advertisement has 429,000 views, 9,281 likes and 3,676 comments on Instagram.[13] By contrast, SEIU 32BJ has 2,600 YouTube subscribers and 20,300 Instagram followers.[14] Hunter's campaign Instagram has 266 followers.[15] SEIU 32BJ, Empire PAC, and Hunter cannot reach the wide audience that the White House can so easily simply by posting these ads on its government-sponsored social media channels.

Even if Plaintiffs were to pay social media platforms to promote or boost their ads, it would come with a hefty price tag that the White House does not need to pay when it posts for free to its millions of followers.[16] Moreover, any such post would not come with the invaluable imprimatur of a message promoted by the federal government—a messenger that some voters trust to operate apolitically and in their best interests. Hunter Second Decl. ¶ 14; Banks Second Decl. ¶¶ 15-16; Tall Second Decl. ¶¶ 24-25. As such, these advertisements put Plaintiffs and the candidates that SEIU 32BJ and Empire PAC support at a significant competitive disadvantage.

---

[12] The White House, *Every Democrat Voted Against No Tax on Tips* (YouTube, Oct. 12, 2026), https://www.youtube.com/watch?v=Uf8CQeM7jHo.

[13] Video posted by The White House (@whitehouse), Instagram, *The largest tax cuts in history* (Oct. 15, 2026), https://www.instagram.com/reel/Deh5XJ_jVVy/?mdxt=MWVodGo3eDl2OTl uNw%3D%3D.

[14] 32BJ SEIU (@32bjseiu), Instagram, https://www.instagram.com/32bjseiu/.

[15] *See* Robert Louis Hunter (@vote4roberthunter), Instagram, https://www.instagram.com/vote4roberthunter/.

[16] Rick Hasen, *Political Money Is Flowing to Influencers. But From Whom?*, Election L. Blog (May 16, 2026), https://perma.cc/CGB4-UQU3 (reporting that an influencer with 14.5 million followers was paid $100,000 for one political post).

### B. The balance of equities and public interest favor Plaintiffs.

Finally, the balance of equities and public interest strongly favor expanding the TRO. As the Court recognized, there is "no public interest in the perpetuation of unlawful agency action" and "a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." Op. and Order 38, Dkt. 42 (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). That is especially true when the government defies limits on the use of government funds. "As the purpose of the Appropriations Clause 'is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good,' any alleged violation is in contravention of that common good and against the public interest." *Id.* at 39 (quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990)). The public interest in an expanded TRO is especially strong here, considering the "ongoing and impending midterm and state elections, and the undoubted public interest in preserving the integrity of the election process." *Id.* (quoting *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 83 (D.D.C. 2025)) (cleaned up).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court expand its TRO as described in the accompanying proposed order.

October 23, 2026

Respectfully submitted,

/s/ *Bradley Girard*

Bradley Girard
Sean Ouellette
Michael J. Gaffney
Anashua Dutta
Paul R.Q. Wolfson
Robin F. Thurston
Democracy Forward

Bruce V. Spiva*
Tara Malloy*
Brent Ferguson
Sejal Jhaveri
Renata O'Donnell
Katherine Hamilton
Campaign Legal Center Action

1333 New Hampshire Ave. NW
Washington, DC 20036
(202) 736-2200

P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bgirard@democracyforward.org

Brendan Ballou*
Samuel T. Ward-Packard
Public Integrity Project Action, Inc.
1763 Columbia Rd. NW, Suite 175
Washington, DC 20009
(917) 684-3900

*Counsel for Plaintiffs*

* Motion to appear pro hac vice forthcoming

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.1(c), I hereby certify that this memorandum of law was prepared using Microsoft Word, and that using the Word Count feature, it is 4,791 words, including footnotes and not including those portions of the memorandum excluded from the word count by Local Rule 7.1(c).

/s/ *Bradley Girard*
Bradley Girard