**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

**Common Cause** et al.,

Plaintiffs,

v.

**Department of Homeland Security** et al.,

Defendants.

**Case No. 26-cv-8882**

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND A SECTION 705 STAY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs' case is a live controversy, and they are suffering an irreparable harm. ........ 1

II. Plaintiffs have standing, and venue is proper in this District. ........ 4

A. This Court's previous standing analysis applies here. ........ 4

B. Venue is proper in this District. ........ 4

III. Plaintiffs are likely to succeed on the merits. ........ 4

A. Plaintiffs are likely to succeed on the merits of their ultra vires claim. ........ 5

B. Plaintiffs are likely to succeed on the merits of their equal protection claim. ........ 7

IV. Plaintiffs' Proposed Order is properly tailored. ........ 8

V. Plaintiffs need not post a Bond ........ 11

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Cases** **Pages**

*ACLU v. National Security Agency*, 925 F.3d 576 (2d Cir. 2019)....10

*Chamber of Commerce of United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)....10

*City of Saint Paul v. Wright*, 816 F. Supp. 3d 65 (D.D.C. 2026)....7

*Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439 (2d Cir. 2021)....2

*Davis v. FEC*, 554 U.S. 724 (2008)....3, 4

*FEC v. Wisconsin Right To Life, Inc*., 551 U.S. 449 (2007)....2-4

*Gelab Cosmetics LLC v. AB Gel Inc.*, No. 2:25-cv-3080, 2026 WL 2524239 (E.D.N.Y. Aug. 27, 2026)....8

*Grytsyk v. Morales*, 527 F. Supp. 3d 639 (S.D.N.Y. 2021)....4

*Havens v. James*, 76 F.4th 103 (2d Cir. 2023)....10

*McConnell v. FEC*, 540 U.S. 93 (2003)....9

*Mullin v. Al Otro Lado*, 609 U.S. 258 (2026)....2

*National Republican Senatorial Committee v. FEC*, 609 U.S. 908 (2026)....3

*Neguse v. ICE*, 822 F. Supp. 3d 86 (D.D.C. 2026)....7

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. 1981)....8

*United States Department of Navy v. Federal Labor Relations. Authority*, 665 F.3d 1339 (D.C. Cir. 2012)....9

**Statutes**

5 U.S.C. § 705....11

**Codes**

11 C.F.R. § 109.21(c)(2)....10

11 C.F.R. § 109.21(d)....10

**Rules**

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................................................9

**Other Authorities**

Alabama Secretary of State, *Unofficial Election Night Results, 2026 General Election* https://www2.alabamavotes.gov/electionNight/statewideResultsByContest.aspx?ecode=1001305 (last visited Nov. 8, 2026).......................................................................................3

Alejandra Jaramillo, *Trump says he will pay for campaign-style ads himself after backlash over taxpayer-funded effort*, CNN (Oct. 6, 2026), https://perma.cc/TTN2-PJTB ...........................10

United States Government Accountability Office, Circumstances of a Mass Mailing of a Letter in Praise of President Nixon, B-178528 (July 27, 1973), https://perma.cc/R82J-M5U2 .............6

United States Government Accountability Office, *Principles of Federal Appropriations Law* (4th ed. 2017) https://perma.cc/NLQ5-G4DA (GAO Red Book) ................................................6, 9

## INTRODUCTION

Plaintiffs are repeat participants in elections at every level of government. Their ability to elect candidates and advance the causes they support depends on persuading voters, recruiting volunteers, and raising funds in a political marketplace that is not distorted by government-sponsored partisan advocacy. Voters continually consume information that shapes their perceptions of parties, candidates, and political movements. Accordingly, when the government uses official resources and platforms to denigrate Plaintiffs' preferred candidates and viewpoints and elevate opposing ones, the resulting injury does not disappear merely because a particular election has passed. Plaintiffs are therefore suffering an irreparable harm, and their claims present a live controversy. As this Court has already held, Plaintiffs have standing and are likely to succeed on the merits, and Defendants do not contest the balance of equities and public interest. The Court should grant the preliminary injunction.

## ARGUMENT

### I. Plaintiffs' case is a live controversy, and they are suffering an irreparable harm.

Plaintiffs suffer irreparable harm because the challenged advertisements denigrate the candidates and causes that they support in upcoming elections. When Defendants air those ads on television or post them for millions to see on official government channels, they diminish the strength of Plaintiffs' messaging, fundraising, organizing, candidate support, and political advocacy efforts. Third Tall Decl. ¶¶ 17, 24; Third Banks Decl. ¶¶ 12-13; Third Hunter Decl. ¶¶ 13-14. That harm is not limited to vote totals in the 2026 election. Plaintiffs' irreparable harm is attributable to the federal government using its official platforms and publicly funded resources to disseminate messages attacking political candidates and causes that Plaintiffs support. Third Tall Decl. ¶¶ 18-21. That competitive and advocacy-related harm continues so long as the challenged advertisements remain available or redistributable through government channels.

Defendants bear the burden to show it is "absolutely clear" that Defendants would not resume their unlawful conduct if allowed to do so. *Mullin v. Al Otro Lado*, 609 U.S. 258, 268 n.7 (2026). Defendants' mootness argument relies on the mistaken premise that this case concerns only a completed media run tied to the November 2026 election. But Plaintiffs' harms stem from Defendants' creating and disseminating partisan propaganda that can start again at any time once the TRO relief expires. Third Tall Decl. ¶ 22. Therefore, "changed circumstances" have not rendered it "impossible for a court to grant any effectual relief whatever to the prevailing party." *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (citation omitted). Defendants can air the advertisements on official government channels after the TRO expires; run the advertisements on television through the LMD contract, which remains operative through 2027; pay LMD $11 million in taxpayer funds for the unlawful advertisements, which has yet to be de-obligated, Dkt. 113 (Opp'n) 3; and create similar propaganda using official government resources. Because it is far from "impossible" for the Court to grant effective relief, Defendants cannot meet their burden to establish mootness. *Id.*

Even if Defendants could meet that burden, the capable-of-repetition-but-evading-review mootness exception applies because (1) Defendants do not contest that the challenged action is too short to be fully litigated prior to cessation or expiration, Opp'n 10, and (2) "there is a reasonable expectation that the same controversy will recur involving the same complaining party." *FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007). Plaintiffs' progressive advocacy did not stop with the 2026 election. Third Tall Decl. ¶¶ 18-20; Third Banks Decl. ¶¶ 9, 12; Third Hunter Decl. ¶¶ 8, 10-11. And Defendants continue to maintain that the challenged conduct was lawful. *See* Opp'n 17-24. Given that $1 million is left of the active LMD contract, Defendants owe $11 million

on that contract, and Defendants still have access to federal government employees' labor and social media channels with millions of subscribers, there is a reasonable expectation of repetition.

Defendants challenge the exception's application based solely on their claim that Plaintiffs' post-election harms are "speculative and inchoate," but their interpretation of the "reasonable expectation" standard defies precedent. Opp'n 10 (quoting *Wis. Right to Life*, 551 U.S. at 463). A candidate need merely express an intent to run again to defeat a claim of mootness. *Davis v. FEC*, 554 U.S. 724, 736 (2008). Indeed, the Supreme Court recently declined to find that an election challenge was moot even where the plaintiff averred no concrete plan to run for office in the future, and the Court instead relied entirely on the existence of the plaintiff's largely non-active Senatorial campaign committee and statement of candidacy to find a live case. *Nat'l Republican Senatorial Comm. v. FEC*, 609 U.S. 908, 916-17 (2026). Here, Hunter narrowly failed to prevail in his race for Alabama House, losing by just 285 votes out of the more than 12,000 cast. Ala. Sec'y of State, *Unofficial Election Night Results, 2026 General Election*, at 12, https://www2.alabamavotes.gov/electionNight/statewideResultsByContest.aspx?ecode=1001305 (last visited Nov. 8, 2026) (showing results for Alabama House District 28). Hunter has stated that he is both looking to run for office in the future and currently working to expand the North Alabama DSA. Third Hunter Decl. ¶ 8.

SEIU 32BJ and Empire PAC similarly have confirmed their intention to continue endorsing progressive, pro-worker candidates, organizing members to support these candidates, and making independent expenditures for such candidates in the 2027 elections. Third Tall Decl. ¶¶ 6,14, 22-24; Third Banks Decl. ¶¶ 6, 9, 12. *In Wisconsin Right to Life*, the plaintiff defeated a claim of mootness by simply alleging it would run "materially similar" ads in upcoming election cycles—without even committing to running "ads in the future sharing all the characteristics that the district

court deemed legally relevant." 551 U.S. at 463 (quotation marks omitted). It is not merely "reasonable to expect," but demonstrably true, that SEIU 32BJ and Empire PAC will continue "materially similar" advocacy for pro-worker candidates in 2027. *Id.*

## II. Plaintiffs have standing, and venue is proper in this District.

As this Court has already held, Plaintiffs have standing, and Plaintiffs' case is properly brought in the Southern District of New York.

### A. This Court's previous standing analysis applies here.

Defendants do not dispute that this Court must assess standing based on the circumstances as they were at the time of the complaint. *See* Dkt. 109 at 7-8; *Davis*, 554 U.S. at 734. Instead, Defendants simply repeat the same standing arguments they made when opposing Plaintiffs' first TRO motion. *See* Opp'n 12-15; Dkt. 37 at 7-10. This Court properly rejected those arguments, and the result should be the same here. *See* Dkt. 42 at 14-15 (explaining that standard for TRO and preliminary injunction is identical).

### B. Venue is proper in this District.

Defendants rehash their previous argument that this District is an improper venue if only Plaintiff Robert Hunter has standing, because he lives in Alabama. Opp'n 15; Dkt. 37 at 11. But this Court has held that SEIU 32BJ and Empire PAC have standing. *See* Dkt. 42 at 26-30. Moreover, Defendants do not assert that the Northern District of Alabama is a more convenient venue for them, even though "venue is a matter of convenience." *Id.* at 27 n.20 (citation omitted).

## III. Plaintiffs are likely to succeed on the merits.

Defendants do not contest that Plaintiffs are likely to succeed on the merits of their APA claims against DHS and OMB, thereby forfeiting any argument on the merits as to the issuance of injunctive relief against these agencies. *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 656

(S.D.N.Y. 2021). Plaintiffs are also likely to succeed on their ultra vires and equal protection claims.

**A. Plaintiffs are likely to succeed on the merits of their ultra vires claim.**

As with their jurisdictional arguments, Defendants assail Plaintiffs' ultra vires claim with arguments this Court has rejected. Because creating and disseminating political propaganda using appropriated funds violates both Section 718 and the Purpose Statute, this Court should enjoin EOP's continued dissemination of similar taxpayer-funded propaganda as ultra vires.

As this Court already found, Plaintiffs are likely to succeed on their claim that "use of EOP appropriated taxpayer funds in the form of EOP staff time to compile or create purely partisan ads that constitute publicity and propaganda was an ultra vires action" with regard to at least three of the challenged advertisements. Dkt. 109-1 at 36:12-15. Embedded in this finding are three propositions Defendants contest: (1) "devotion of staff time constitutes the use of appropriated funds" Opp'n 19, (2) use of EOP staff time to compile political advertisements likely violates Section 718, notwithstanding "EOP's function within the Executive Branch," *id.*, and (3) at least three of the challenged advertisements are publicity and propaganda clearly prohibited by Section 718, *id.* at 21-24. For the reasons detailed by this Court and in Plaintiffs' Opening Brief, those findings are correct. *See* Dkt. 109 at 21-23.

Plaintiffs are likely to succeed on their claim that the universe of challenged advertisements identified in the Opening Brief must be enjoined for the same reasons. Defendants contend that Plaintiffs' claim must fail with regard to "the [] specific advertisements at issue" because Plaintiffs "fail to offer an ad-by-ad argument" spelling out how each is unconnected to official functions.[1]

[1] Defendants are correct that that the video "The Country He Loves" is the same video titled "America Will Never Be a Socialist/Communist Country," bringing the number of specific advertisements that Plaintiffs challenge to five. Opp'n 22 n.7

Opp'n 22. But this Court has already found that three of the five are likely "purely partisan" Dkt. 109-1 at 34:1-2; or "publicity and propaganda in contravention of Section 718." Dkt. 109-1 at 35:1.[2] Plaintiffs have already explained how the other two ads—"Final Battle" and "The County He Loves"/"America Will Never Be a Socialist/Communist Country"—are similarly "purely partisan," attacking ideologies that Trump opposes. Dkt. 109 at 5. As the Court explained, "Final Battle" "is almost identical to [an ad] used during President Trump's 2024 campaign" and "provides no information about . . . official functions." Dkt. 42 at 36. The rest of the universe of challenged advertisements—"political advertisement[s] attacking or promoting a particular candidate, party, or political ideology"—violate Section 718's prohibition on "publicity or propaganda." U.S. Gov't Accountability Off., *Principles of Federal Appropriations Law*, at 3-282 (4th ed. 2017), https://perma.cc/NLQ5-G4DA (GAO Red Book).

Defendants' example of a mass mailing found not to be self-aggrandizement merely highlights the egregiousness of their conduct here. Opp'n 21-22. The purpose of the mailing, according to GAO, was to "rebut claims that allies of the United States had turned against the United States in the days preceding the 'ceasefire' on Vietnam and were critical of the President." U.S. Gov't Accountability Off., Circumstances of a Mass Mailing of a Letter in Praise of President Nixon, B-178528 (July 27, 1973), https://perma.cc/R82J-M5U2. GAO concluded the Republican National Committee, not the State Department, funded the challenged mailing. *Id.* Further, GAO concluded that the letter's signatory did not know the purpose for which the letter would be used. *Id.* Here, however, "the advertising campaign's intended goal" of tilting public opinion in favor of

[2] This includes "$5,000 to Americans," which Defendants continue to insist "informs the general public of a new monetary proposal." The "monetary proposal," apparently, is the $5,000 reward Americans would have received only if they had overwhelmingly voted for the Republican Party last week. Opp'n 23; *cf.* Dkt. 109-1 at 35:5-11.

Republicans has been known by at least some EOP staff since the August 7 White House meeting, which Defendants still do not dispute occurred. Dkt. 42 at 25.

Just as it is not difficult to determine that the challenged advertisements are "publicity or propaganda," it is clear that Congress did not appropriate funds to EOP to create them. Nonetheless, EOP "used" appropriated funds when it "compiled" the challenged advertisements, in violation of the Purpose Statute. Defendants claim "ambiguity" around whether staff time constitutes "use" of appropriate funds, Opp'n 18-19, but agencies themselves have recognized that it does. *See Neguse v. ICE*, 822 F. Supp. 3d 86, 96 (D.D.C. 2026). Holding otherwise would create an exception that swallows both the Purpose Statute and Section 718. Defendants raise the difficulty of discerning whether funds are being used for their intended purpose, Opp'n 23, but this is not a borderline case. Congress simply did not appropriate any funding to EOP to produce political advertisements praising President Trump and attacking his ideological opponents, and the challenged advertisements do so. Plaintiffs are likely to succeed on their ultra vires claim because Defendant EOP violates Section 718 and the Purpose Statute, in excess of its delegated powers.

**B. Plaintiffs are likely to succeed on the merits of their equal protection claim.**

Plaintiffs are likely to succeed on the merits of their equal protection claim because Defendants have, without any purported justification, used appropriated funds to advantage Republicans and others President Trump supports over Plaintiffs, Democrats, socialists, and other perceived political enemies of the President. *See City of Saint Paul v. Wright*, 816 F. Supp. 3d 65, 72-74 (D.D.C. 2026) (treating states that voted for President Trump differently is an equal-protection classification). Defendants argue that Plaintiffs have not shown Defendants intended to discriminate based on political identity, Opp'n 24, but they have spent millions of dollars and hours of EOP staff and agency time to uplift President Trump and his allies while denigrating his opponents. There can be no serious doubt that the ads' messages evince an attempt by Defendants

to treat President Trump and his allies differently from his opponents for which they have provided no rational basis, given that EOP staff did not compile ads attacking Republicans running for office. *See, e.g.*, "Every Democrat Voted Against No Tax on Tips" (disparaging Democratic Congressmembers). Plaintiffs are therefore likely to succeed on their equal protection claim.

## IV. Plaintiffs' Proposed Order is properly tailored.

Each provision of Plaintiffs' Proposed Order is narrowly tailored to remedy the harms described in the Opening Brief. The Court possesses the broad equitable authority to tailor preliminary injunctive relief, regardless of the Proposed Order. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir. 1981).

Defendants take issue with the Proposed Order for three reasons. First, they argue that the provision enjoining "any political advertisement attacking or promoting a particular candidate, party, or political ideology," Dkt. 110 at 2, is too broad, because "only advertisements that constitute 'publicity or propaganda' are barred by 718," *see* Opp'n 25. Defendants' argument presumes that the injunctive relief is predicated only on Plaintiffs' Section 718 ultra vires claim. But Plaintiffs move for preliminary injunctive relief on other claims, which would prohibit using government resources to create the challenged advertisements described in the Proposed Order. If the Court concludes that Defendants' use of appropriated resources to create or disseminate partisan electoral advocacy is unconstitutional or exceeds statutory authority, the Court may tailor relief to prevent recurrence of that conduct and is not restricted to prohibiting only communications that Defendants characterize as "publicity or propaganda." Should the Court find that Plaintiffs are entitled to relief only as to their Section 718 ultra vires claim, the Court can shape relief limited to express political propaganda. *See, e.g.*, *Gelab Cosmetics LLC v. AB Gel Inc.*, No. 2:25-cv-3080, 2026 WL 2524239, at *3 (E.D.N.Y. Aug. 27, 2026) (modifying proposed order to craft equitable remedy). This Court has drawn a clear line around the advertisements that cross the line into illegal

propaganda under Section 718: those ads that are purely partisan and do not simply support "the president's functions, policies, activities." *See* Dkt. 109-1 at 16:11-18. The Court's previous orders demonstrate that this provision is not too vague and can be applied to new illegal advertisements should they occur.

Defendants next argue that the provision in the Proposed Order that includes the phrase "challenged advertisements" should be rejected because including "any political advertisement attacking or promoting a particular candidate, party, or political ideology," is vague. Dkt. 110 at 2. But regulations on political advertising contain nearly identical phrases, and the Supreme Court has held that "[t]he words 'promote,' 'oppose,' 'attack,' and 'support' . . . provide explicit standards for those who apply them and give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *McConnell v. FEC*, 540 U.S. 93, 170 n.64 (2003),

Moreover, Section 718 and the Purpose Statute, under which Plaintiffs bring their claims, limit the phrase. Under the relief sought, Defendants could not produce "any political advertisement attacking or promoting a particular candidate, party, or political ideology," only when it constitutes propaganda under Section 718 or violates the purpose for which Congress appropriated funds to Defendants. *See* GAO Red Book, at 3-293-94; *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347-48 (D.C. Cir. 2012) (Kavanaugh, J.). Similarly, Defendants' criticism of the phrase "other similar sites" as overly vague, *see* Opp'n 26, ignores that the proposed language limits the similar sites to "official government websites or social media channels," *see* Dkt. 110 at 2, which provides clear and concrete guidance.

Finally, Defendants argue once again that this Court cannot use its equitable power to enjoin LMD or MAGA. Opp'n 15-16, 26. But that argument fails for the same reason it failed last month: the Federal Rules provide that this Court may bind those, like MAGA and LMD, "who are

in active concert or participation" with a party or its agents. Fed. R. Civ. P. 65(d)(2)(C); *See* Dkt. 40 (enjoining LMD); Dkt. 101 (enjoining MAGA). Adopting Defendants' argument would significantly curtail the effectiveness of injunctive relief in a way that Rule 65 is meant to prevent.

Defendants dispute whether MAGA is "in active concert and participation" with Defendants, Opp'n 16, but they misstate both the facts and the law. Rule 65(d)(2)(C) allows courts to enjoin non-parties that take actions "for the benefit of, or to assist" a party in violating an injunction. *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023). Defendants admit that EOP staff "compiled" the ads before MAGA aired them. Dkt. 75-5 at 5. Therefore, there is no question here that MAGA acted for the benefit of Defendant EOP when it ran EOP-created ads, and that MAGA would benefit Defendants by running the ads in the future. Indeed, were Trump a candidate, MAGA's ads would likely constitute a *contribution* to Trump if they "republishe[d]" EOP-created material or were aired after discussion with Trump or EOP about material aspects of their content, target audience, or media placement. 11 C.F.R. § 109.21(c)(2), (d). MAGA is accordingly acting "in active concert" with EOP or the other Defendants.

Although Defendants claim there is no "evidence" of a relationship between Defendants and MAGA, Opp'n 16, they make no attempt to explain how MAGA came to utilize the EOP-created advertising it aired on television. MAGA's letter pledging to comply with this Court's Order, Dkt. 109-3, demonstrates its awareness that running the ads in the future would benefit or assist Defendants. Moreover, President Trump has repeatedly confirmed that he controls MAGA and proclaimed that he would direct MAGA to air the ads initially funded by DHS, thereby erasing any doubt about whether MAGA's actions are intended to benefit EOP when it airs pro-Trump,

EOP-created ads.[3] *See* Alejandra Jaramillo, *Trump says he will pay for campaign-style ads himself after backlash over taxpayer-funded effort*, CNN (Oct. 6, 2026), https://perma.cc/TTN2-PJTB; *see, e.g.*, *ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 599 n.126 (2d Cir. 2019) (concluding that government's "public statements are precisely the sort of materials of which we may take judicial notice").

The Court may also enjoin LMD. As Defendants admit, LMD is in a contractual relationship with DHS, and LMD is therefore in active concert with Defendants. *See* Opp'n 3, 26. The Court should again reject Defendants' effort to misconstrue Rule 65 in hopes of diminishing the practical effect of any injunctive relief this Court may issue.

## V. Plaintiffs need not post a bond.

Plaintiffs should not be required to post a bond. The Court has wide discretion to dispense with Rule 65(c)'s bond requirement "where there has been no proof of likelihood of harm" to the restrained party. Defendants do not claim they will suffer any harm if the Court issues the requested relief. The Court should therefore dispense with the bond requirement.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction and a stay under 5 U.S.C. § 705 as described in the accompanying Proposed Order.

| | |
|---|---|
| November 9, 2026 | Respectfully submitted, |
| | <u>*/s/ Renata O'Donnell*</u> |
| Bradley Girard | Renata O'Donnell |
| Sean Ouellette | Bruce V. Spiva |
| Michael J. Gaffney | Tara Malloy |
| Anashua Dutta | Brent Ferguson |

[3] To the extent that Defendants argue that MAGA is in concert only with President Trump, Opp'n 16-17, the Court can properly "enjoin the officers who attempt to enforce the President's directive" as well as those in active concert with them. *See Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

Paul R.Q. Wolfson
Robin F. Thurston
Democracy Forward
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Brendan Ballou
Samuel T. Ward-Packard
Public Integrity Project Action, Inc.
1763 Columbia Rd. NW, Suite 175
Washington, DC 20009
(917) 684-3900

Sejal Jhaveri
Katherine Hamilton
Campaign Legal Center Action
1333 New Hampshire Ave. NW
Washington, DC 20036
(202) 736-2200
rodonnell@campaignlegalcenter.org

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.1(c), I hereby certify that this memorandum of law was prepared using Microsoft Word, and that using the Word Count feature, it is 3,450 words, including footnotes and not including those portions of the memorandum excluded from the word count by Local Rule 7.1(c).

/s/ *Renata O'Donnell*
Renata O'Donnell